```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
THE AMERICAN SOCIETY FOR THE                              :
PREVENTION OF CRUELTY TO ANIMALS,                         :   **MEMORANDUM**
                                                          :   **DECISION AND ORDER**
                            Plaintiff,                    :
                                                          :   19-cv-4401 (BMC)
            - against -                                   :
                                                          :
J.C. CLOTHING DRIVE, INC.,                                :
                                                          :
                            Defendant.                    :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

Plaintiff The American Society for the Prevention of Cruelty to Animals ("ASPCA") brings this trademark infringement action against a company that is essentially a former licensee that has refused to stop using ASPCA's trademarks despite the expiration of the license. It is before the Court on ASPCA's motion for a default judgment pursuant to Federal Rule of Civil Procedure 55(b), the Clerk having noted defendant's default under Rule 55(a). The motion is granted.

## BACKGROUND

ASPCA has a program called the ASPCA Business Ambassador Program. Participants in the Ambassador Program help raise funds and awareness for ASPCA or provide other support to its mission. In return, the participant is granted permission to use both ASPCA's trademarks and a special ASPCA Business Ambassadors badge (both of which the participant apparently feels will either attract consumers to it or it will help the participant's own mission by consumers' associating ASPCA with the participant). Under the terms and conditions of the Ambassadors

Program, each authorized participant is entitled to use ASPCA's intellectual property for a one-year period. That term can be renewed annually subject to the approval of ASPCA.

ASPCA has been using its trademarks in commerce since 1866 on various products and services. One of the marks, Reg. 1,891,019, issued by the U.S. Patent and Trademark Office on April 25, 1995, covers "THE AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS" as applied to every variety of printed matter of which one could conceive, expressly including "charitable fundraising," as well as clothing and services involving animal care and protection. Another mark, Reg. 1,934,584, issued November 14, 1995, covers "ASPCA". It has the same scope as the '019 trademark.

In June 2016, defendant J.C. Clothing Drive, Inc. ("JCCD"), a New York corporation located in Queens, was admitted into the Ambassador's Program for the one-year period; the term therefore ended in June 2017. JCCD did not seek to re-register for further participation and thus its right to use ASPCA's trademarks lapsed at that time.

Nevertheless, JCCD continued to use ASPCA's two trademarks. It distributed flyers, a copy of one of which is annexed to the complaint, showing the trademarks in its solicitation of household items, clothing, toys, appliances, and electronics. The flyer stated that bags containing donations "must clearly be marked 'ASPCA'" and contained advice at the bottom stating:

> The American Society for the Prevention of Cruelty to Animals® (ASPCA®) was the first humane society to be established in North America and is, today, one of the largest in the world. JC Clothing Drive is proud to support he ASPCA® and its mission to save lives. To learn more, visit: aspca.org.

Alongside this legend, the flyer displayed the ASPCA Ambassador Program's symbol. It also featured prominently a picture of cute cats and dogs (with which JCCD has no apparent

2

association other than through its association with ASPCA). However, JCCD never turned over any donations to ASPCA.

ASPCA sent multiple cease and desist letters to JCCD, both before and after the filing of this action, to no avail. JCCD has continued to distribute flyers bearing the ASPCA marks in connection with clothing drives. ASPCA received a number of communications from concerned citizens regarding JCCD's use of the ASPCA's trademarks. In 2018, one person reported receiving flyers approximately every two weeks. Additional reports from others came in throughout the spring and summer of 2019.

The complaint asserts five claims for relief. The first two are under the Lanham Act § 32 (15 U.S.C. § 1114(1)) and § 43(a) (15 U.S.C. § 1125(a)(1)), respectively. The third and fifth claims are under the corresponding provisions of state statutory law (N.Y. Bus. Corp. L. § 349) and common law (unfair competition), respectively.[1] The fourth is for trademark dilution under 15 U.S.C. § 1125(c).

## DISCUSSION

In light of JCCD's default in this case, all of the well-pleaded allegations in plaintiff's third-party complaint pertaining to liability are deemed true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992). However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). A court may conduct hearings to determine the amount of damages, but an inquest by paper record – rather than an in-person court hearing – is

---

[1] Since federal law provides ASPCA with full relief, I need not consider its additional claims under state law. See Coach Servs., Inc. v. K Ya Int'l, Inc., No. 09-cv-4656, 2010 WL 2771897, at *2 n.5 (S.D.N.Y. June 10, 2010).

3

appropriate when the court relies on affidavits and other documentary evidence and the amount is liquidated. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105 (2d Cir. 1997). In addition, "[t]he Court may issue an injunction on a motion for default judgment upon a showing by the moving party that it is entitled to injunctive relief under the applicable statute, and that it meets the prerequisites for the issuance of an injunction." United States v. Thomas, No. 18-cv-1104, 2019 WL 121678, at *6 (E.D.N.Y. Jan. 7, 2019) (internal citations omitted).

ASPCA is entitled to the relief it seeks.

First, ASPCA has pled plausible claims for trademark infringement under federal law, state statutory law, and state common law. To establish a defendant's liability for trademark infringement under the Lanham Act § 32 (15 U.S.C. § 1114(1)), a plaintiff must show that (1) the plaintiff registered its mark, (2) the defendant, without the plaintiff's consent, (3) "used in commerce" (4) a reproduction of the plaintiff's mark "as part of the" sale, distribution, or advertisement of a good, (5) where such use was likely to cause confusion. See Gruner + Jahr USA Pub'g v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993). To prevail under the Lanham Act § 43(a) (15 U.S.C. § 1125(a)(1)), a plaintiff must show (1) that it owns a "protectable trademark" and (2) that the defendant's mark "is likely to confuse consumers as to the source or sponsorship of [the plaintiff's] product." See Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000). As is self-evident from the preceding section of this decision, ASPCA has demonstrated all of these elements.

ASPCA seeks statutory damages pursuant to section 35 of the Lanham Act (15 U.S.C. § 1117(c)). That statute authorizes damages of up to $200,000 per infringed mark, or $2 million per infringed mark if the infringement is willful. The deemed admitted allegations in ASPCA's

4

complaint, coupled with JCCD's default and failure to respond to the default judgment motion, compels a finding that the infringement is willful.  See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (non-appearance and failure to respond to a complaint and motion for default judgment indicated willful conduct).  ASPCA is only seeking damages of $30,000 per mark and only one instance of infringement each, for a total of $60,000, which seems quite conservative under the facts presented here.

ASPCA also seeks injunctive relief.  Under the Lanham Act § 43(c) (15 U.S.C. § 1125(c)), injunctive relief is available for a "famous" mark where the infringer's conduct causes "dilution by blurring."  "Famous" means "widely recognized by the general consuming public," 15 U.S.C. § 1125(c)(2), which is easily met with respect to ASPCA.  "Dilution by blurring" is based on multiple considerations set forth in the statute, all of which are also met here (i.e., degree of similarity between the two marks – they are identical here; distinctiveness of the famous mark; the extent of exclusive use of the famous mark; degree of recognition of the famous mark; actual association between the mark and the famous mark).  Id.

Once a trademark owner meets these threshold requirements, courts generally apply by analogy the four-factor test articulated by the Supreme Court for patent actions in eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 390 (2006).  See e.g., Salinger v. Colting, 607 F.3d 68, 78 n.7 (2d Cir. 2010); U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011), aff'd, 511 F. App'x 81 (2d Cir. 2013).  Under this test, permanent injunctive relief should issue where the plaintiff has succeeded on the merits and: (1) plaintiff is "likely to suffer irreparable injury in the absence of an injunction"; (2) remedies at law, such as monetary damages, are inadequate to compensate plaintiff for that injury; (3) the "balance of hardships"

tips in plaintiff's favor; and (4) the "public interest would not be disserved" by the issuance of a permanent injunction. See Salinger, 607 F.3d at 80 (quoting eBay, 547 U.S. at 391). "The Court may issue a permanent injunction in the context of a default judgment where these requirements are met." CrossFit, Inc. v. 2XR Fit Sys., LLC, No. 13-cv-1108, 2014 WL 972158, at *9 (D.N.J. Mar. 11, 2014); see also Hilton v. Int'l Perfume Palace, Inc., No. 12-cv-5074, 2013 WL 5676582, at *12 (E.D.N.Y. Oct. 17, 2013). Once again, ASPCA's entitlement to injunctive relief under these requirements on the facts presented here seems obvious enough to require no discussion.

Finally, ASPCA seeks attorneys' fees and costs. Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), allows this if the infringement is "willful" and the case is "exceptional." I have already found JCCD's infringement willful. To find a case exceptional, the Second Circuit requires, at least, bad faith. See Twin Peaks Prods., Inc. v. Publn's Int'l, Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993). Considerations similar to those upon which my willfulness finding is based lead me to conclude that JCCD's use of the mark is in bad faith. It is not only its decision to ignore this lawsuit and the motion for a default judgment; it is also JCCD's determination to not respond to the multiple attempts that ASPCA made prior to commencing litigation to get it to cease and desist, leaving an absence of any plausible reason for using ASPCA's marks. Indeed, in the context of default with a non-responsive pre-litigation posture, it is hard to reach any conclusion other than bad faith, as it is not my responsibility to assert potential defenses that a defendant has chosen to waive. See generally Greathouse v. JHS Sec. Inc., 784 F.3d 105, 119 (2d Cir. 2015) (Korman, D.J., concurring in part, dissenting in part) ("There is something wrong when a case or controversy, to the extent that it exists, is principally between a plaintiff and the judge[] deciding the case.").

As to the amount of attorneys' fees, the rates of ASPCA's attorneys are consistent with other rates among large New York law firms for intellectual property work that practice in this district.  I am reducing the time requested, however, by 5.0 hours of partner time.  There was unnecessary confusion among ASPCA's attorneys stemming from the failure to comply with Federal Rule of Civil Procedure 4(l) and an ambiguous request for an adjournment.  In addition, there is an unnecessary 4.0 hours of partner time for the initial status conference, which took less than 5 minutes because of JCCD's failure to appear, something of which ASPCA's attorneys could have known and avoided with a second, more meaningful request for an adjournment.  This reduces the amount requested by ASPCA to $32,815.30 plus $727.47 in costs for a total of $33,614.97.

## CONCLUSION

The motion for a default of judgment of ASPCA is granted to the extent set forth above.  Judgment will be entered accordingly.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
December 22, 2019